**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 1:21-cr-00246-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     **JASON MCGUIRE,**
2.     **TIMOTHY STILLER,**

    Defendants.

---

**DEFENDANTS' JOINT MOTION TO DISMISS COUNT ONE OF THE INDICTMENT**

---

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

APPLICABLE LAW .......................................................................................................................3

ARGUMENT ...................................................................................................................................4

I. The Indictment Does Not Allege an Agreement. ..................................................................4

    A. The Indictment's Conclusory Allegations of a "Continuing Network" Are Insufficient. ............................................................................................................4

    B. The Superseding Indictment's Allegations of Inter-Firm Communications and Price Sharing Do Not Sufficiently Allege an Agreement. .............................5

    C. The Superseding Indictment Is Independently Insufficient Because It Fails To Allege Parallel Actions by the Suppliers. ..................................................8

II. The Superseding Indictment Fails To Allege an Agreement To Unreasonably Restrain Trade. ......................................................................................................................9

III. The Indictment Fails To Allege that Either Mr. McGuire or Mr. Stiller Knowingly Joined Any Agreement. .......................................................................................................11

IV. The Superseding Indictment Improperly Alleges Multiple Conspiracies in the Same Count. ...................................................................................................................................12

V. The Sherman Act Is Void for Vagueness. ...........................................................................13

CONCLUSION ..............................................................................................................................14

**INTRODUCTION**

Defendants Jason McGuire and Timothy Stiller respectfully move the Court to dismiss Count One of the Superseding Indictment, ECF No. 102 (July 12, 2022), ¶¶ 1–145, for failure to state a claim. Count One charges Messrs. McGuire and Stiller with conspiracy to restrain trade in violation of Section One of the Sherman Act, 15 U.S.C. § 1, specifically, that they and others conspired to fix prices and rig bids for broiler chicken products. Superseding Ind. ¶ 1. But the allegations in Count One are insufficient to state a violation of the Sherman Act.

As a threshold matter, the Superseding Indictment fails to sufficiently allege the existence of an agreement among members of the broiler chicken industry to fix prices or rig bids. Although the allegations in Count One span nearly forty pages, nowhere does Count One allege *who* agreed to *what* and *when*. Rather, Count One alleges merely the sharing of pricing information among competing chicken suppliers, which is *legal*, and cannot support an inference of an illegal antitrust conspiracy.

Even if Count One could be read to allege an illegal agreement, it would remain insufficient on several independent grounds. First, it does not allege that any such agreement was unreasonable or anticompetitive. Second, it does not allege that Messrs. McGuire and Stiller knowingly and intentionally joined an illegal agreement. Third, it improperly combines multiple alleged conspiracies into a single count. And, fourth, the Sherman Act is void for vagueness. For all these reasons, the Court should dismiss Count One of the Superseding Indictment

## BACKGROUND

On July 28, 2021, a grand jury returned an Indictment against Messrs. McGuire and Stiller, along with their Pilgrim's co-workers Justin Gay and Wesley Scott Tucker,[1] alleging one count of conspiracy to rig bids and fix prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  ECF No. 1.  The Indictment alleges in conclusory terms that Messrs. McGuire and Stiller "participated in a continuing network of Suppliers and co-conspirators, an understood purpose of which was to suppress and eliminate competition through rigging bids and fixing prices and price-related terms . . . ." Superseding Ind. ¶ 56.  The Indictment further alleges that Messrs. McGuire and Stiller "utilized that continuing network: to reach agreements and understandings to submit aligned—though not necessarily identical—bids and to offer aligned—though not necessarily identical—prices, and price-related terms, including discount levels, for broiler chicken products . . . ." Superseding Ind. ¶ 57(a).  The Indictment also alleges that Messrs. McGuire and Stiller utilized this network to monitor bids submitted by suppliers and otherwise "to participate in conversations and communications relating to non-public information such as bids, prices, and price-related terms, including discount levels, for broiler chicken products . . . , with the shared understanding that the purpose of the conversations and communications was to rig bids and to fix, maintain, stabilize, and raise prices and other price-related terms, including discount levels . . . ." Superseding Ind. ¶ 57(b)–(c).

---

[1] On August 5, 2022, the government moved to dismiss Count One as to Messrs. Gay and Tucker without prejudice.  ECF No. 124.  The Court granted the motion to dismiss on August 11, 2022.  ECF No. 132.

2

On July 12, 2022, a grand jury returned a Superseding Indictment. Count One of the Superseding Indictment, which alleges the Sherman Act violation, is virtually identical to the Sherman Act count of the initial Indictment.[2]

## APPLICABLE LAW

To survive a motion to dismiss, the Superseding Indictment must state facts sufficient to establish "the essential elements of the offense." *See United States v. Kilpatrick*, 821 F.2d 1456, 1461 (10th Cir. 1987). In evaluating whether an indictment is sufficient, "a court generally is bound by the factual allegations contained within the four corners of the indictment." *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003).

The elements of a federal criminal antitrust conspiracy are: (1) the existence of an agreement, (2) to unreasonably restrain trade, (3) affecting interstate commerce, (4) that was knowingly entered into by the defendant with the intent to unreasonably restrain competition. *See* 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."); *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) (reading the statutory term "restraint of trade" to refer to only to unreasonable restraints); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 & 444 (1978) (discussing the applicable *mens rea* standard); *see generally* Sand et al., 3 Modern Federal Jury Instructions–Criminal § 58.01.

Although it is sufficient in other contexts for an indictment to "parrot[] the language of a federal criminal statute," *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007), where a criminal statute uses "generic terms," as the Sherman Act does, an indictment "must descend to

---

[2] The only difference as to Count One is that the Superseding Indictment adds an allegation that concealment was an objective of the conspiracy. Superseding Ind. ¶ 57(d).

particulars," *Russell v. United States*, 369 U.S. 749, 765 (1962). It must "describe[] this particular conspiracy" and the defendant's knowing and intentional participation therein. *United States v. Mobile Materials, Inc.*, 871 F.2d 902, 909 (10th Cir. 1989).

## ARGUMENT

### I.     The Indictment Does Not Allege an Agreement.

"The essence" of a Section 1 violation "is the agreement itself." *Llacua v. Western Range Ass'n*, 930 F.3d 1161, 1174 (10th Cir. 2019). But Count One does not allege the existence of an agreement—"a meeting of minds in an unlawful arrangement." *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946). It should therefore be dismissed.

####     A.     The Indictment's Conclusory Allegations of a "Continuing Network" Are Insufficient.

Count One begins with the assertions that Messrs. McGuire and Stiller "entered into and engaged in a continuing combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices," Superseding Ind. ¶ 1, and that "the charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendants and co-conspirators, the substantial terms of which were to rig bids and to fix, maintain, stabilize, and raise prices and other price-related terms for broiler chicken products sold in the United States," *id.* ¶ 2. These conclusory assertions fail to allege the existence of an agreement with the requisite particularity. Instead, the allegations merely "parrot[] the language of [the] statute," *Resendiz-Ponce*, 549 U.S. at 109, and fail to "describe[] this particular conspiracy," *Mobile Materials, Inc.*, 871 F.2d at 909.

Count One then proceeds to the above-noted allegations about a "continuing network," which Messrs. McGuire and Stiller allegedly used to "reach agreements and understandings to

4

submit aligned—though not necessarily identical—bids." Superseding Ind. ¶ 56–57. These allegations are no more specific than those above. They also fail on their own terms. A "continuing network" is not an agreement; and even if Messrs. McGuire and Stiller utilized such a network to "reach agreements and understandings," nowhere does Count One actually allege *who* agreed to *what* and *when*. These conclusory statements thus are insufficient to allege the requisite unlawful agreement.

### B. The Superseding Indictment's Allegations of Inter-Firm Communications and Price Sharing Do Not Sufficiently Allege an Agreement.

The Superseding Indictment then proceeds to allege fourteen bidding or pricing events, i.e., "episodes," that the government alleges were tainted by price-fixing.[3] *See* Superseding Ind. ¶¶ 60–143. Within each episode, the Superseding Indictment's allegations follow the same pattern. First, the Superseding Indictment alleges phone calls between employees of various chicken suppliers. *See, e.g.*, Superseding Ind. ¶¶ 79(a), 80(a), 82. The Superseding Indictment does not allege the content of any of these calls, but rather alleges that, at a later time, employees of one supplier appear to have had knowledge of another supplier's bid or price. *See, e.g.*, Superseding Ind. ¶¶ 65, 79(b), 80(b). The government apparently infers that pricing information was exchanged during the alleged calls.

Even if such an inference were valid, this alleged exchange of pricing and bidding information would not establish the existence of a price-fixing conspiracy. Antitrust law distinguishes between price-fixing *agreements*, which are illegal, and mere *exchanges of pricing information* in the absence of an agreement, which are not. In particular, it is legal for competing

---

[3] Per the Court's August 12, 2022 order, ECF No. 134, the government subsequently produced a Bill of Particulars, ECF No. 136–1, indicating that it will pursue eight episodes from the Superseding Indictment, plus one unindicted episode, at trial. The Bill of Particulars in no way cures the deficiencies of the Superseding Indictment.

5

companies to communicate with each other about price. *See Gypsum*, 438 U.S. at 441 n.16 ("The exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive."); *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) ("Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange."). It is also legal for one company to *rely* on shared competitor information in making independent pricing or bidding decisions. *See United States v. Penn*, Jury Instruction No. 18, No. 20-cr-152, ECF No. 921 (D. Colo. Dec. 16, 2021) ("It is not illegal for a competitor to obtain, rely upon, and act on pricing and other information received from competitors . . . so long as there is no agreement to fix prices or to rig bids."). At most, then, Count One alleges the legal exchange of pricing information among competitors.[4]

These allegations are not even sufficient to raise an inference of an illegal price-fixing agreement, as federal courts have repeatedly held. *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) ("[C]ommunications between competitors do not permit an inference of an agreement to fix prices unless those communications rise to the level of an agreement, tacit or otherwise." (quotation and citation omitted)); *Kleen Products LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 931–32 (7th Cir. 2018) (refusing to infer a Section 1 conspiracy even where "the

---

[4] In *United States v. Metropolitan Enterprises, Inc.*, 728 F.2d 444 (10th Cir. 1984), an indictment charging a bid-rigging conspiracy among paving contractors alleged that the defendants: "discussed the submission of prospective bids; agreed among themselves upon a low bidder; agreed that appellant . . . , would receive a specified subcontract [from the low bidder, in exchange for participation in the scheme] to perform certain work on the projects in question; and submitted intentionally high, noncompetitive bids, or withheld bids." *Id.* at 453. The Tenth Circuit found these allegations sufficient, but there is nothing comparable in Count One.

6

defendants were in regular communication" and received from each other foreknowledge of their competitors' price increases); *Llacua v. Western Range Ass'n*, No. 15-cv-1889, 2016 WL 9735747, at *15 (D. Colo. June 3, 2016), *report and recommendation adopted in substantial part*, 2016 WL 9735748 (D. Colo. Sept. 6, 2016) ("[A]n interfirm communication does not suffice to infer conspiracy unless it suggests a meeting of minds.").[5] More generally, no inference of an antitrust conspiracy arises from "conduct as consistent with permissible competition as with illegal conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). And, as courts repeatedly have noted, price sharing among competitors is "consistent with permissible competition." *See In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015) ("[W]ithout suspecting illegal collusion, [fact-finders may] expect competing firms to keep close track of each other's pricing and other market behavior and often to find it in their self-interest to imitate that behavior rather than try to undermine it."). To support an inference of an illegal conspiracy, Count One must allege "evidence that tends to *exclude* the possibility that [the defendants] were acting independently." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (emphasis added). Because it does not, Count One should be dismissed.

---

[5] *United States v. Container Corp. of Am.*, 393 U.S. 333 (1969), is not to the contrary. There, the Supreme Court held that the plaintiff had proven, after a bench trial, the existence of a price-fixing agreement on the strength of evidence of price-sharing among competitors. But there, the plaintiff had proven that the competitors engaged in a repeated pattern of *reciprocal* price exchanges, i.e., that each defendant "usually furnished the data with the expectation that it would be furnished reciprocal information when it wanted it." *Id.* at 335. Also, the plaintiff there had proven that, "[i]n the majority of instances . . . once a defendant had [his competitor's pricing information] he quoted substantially the same price as the competitor." *Id.* at 339 (Fortas, *J.*, concurring). Nothing of the sort is alleged here.

### C. The Superseding Indictment Is Independently Insufficient Because It Fails To Allege Parallel Actions by the Suppliers.

Count One fails to sufficiently allege the existence of an illegal agreement for the independent reason that the Superseding Indictment does not allege parallel action by the chicken suppliers. "When an antitrust plaintiff relies on circumstantial evidence of conscious parallelism to prove a § 1 claim, he must first demonstrate that the defendants' actions *were parallel*." *In re Beef Industry Antitrust Litig.*, 907 F.2d 510, 514 (5th Cir. 1990) (emphasis added) (affirming the grant of summary judgment to defendants where plaintiffs had not shown parallel pricing). Absent such allegations, courts have refused to allow such claims to proceed. *See In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 364 (S.D.N.Y. 2019) (granting in part defendants' motion to dismiss a civil price-fixing complaint involving bonds because "[t]he complaint [did] not . . . include any evidence that defendants all priced their bonds similarly"); *Krehl v. Baskin-Robbins Ice Cream Co.*, No. 76-cv-1797, 1979 WL 1662, at *10 (C.D. Cal. Aug. 7, 1979) (granting motion to dismiss plaintiffs' Section 1 complaint where "[t]he actual prices charged by the [defendants] have been disparate and in themselves demonstrate no pattern from which this court may infer a conspiracy").

Here, the Superseding Indictment asserts in a conclusory manner that the purpose of the supposed conspiracy was for the broiler chicken suppliers to submit "aligned" but "not necessarily identical" bids in order to "fix, maintain, stabilize, and raise prices." Superseding Ind. ¶ 57. But the Superseding Indictment alleges *no examples* of parallel pricing by the

suppliers.[6]  Indeed, the few allegations in the Superseding Indictment that relate to price demonstrate that suppliers' prices and strategies were *different*.  *See, e.g.*, Superseding Ind. ¶ 108 (suppliers charged different profit margins in 2015 contracts with "QSR-1"); *id.* ¶ 141 (in 2018 negotiations with "QSR-2," Claxton offered a one-year contract and Pilgrim's offered a two-year contract).

## II.     The Superseding Indictment Fails To Allege an Agreement To Unreasonably Restrain Trade.

Even if the Superseding Indictment could be read to allege an agreement, it would still suffer from an additional, independently fatal flaw:  the Superseding Indictment does not allege that the purported price-fixing agreement was an unreasonable restraint of trade.

Although the text of the Sherman Act refers to "*[e]very* . . . conspiracy, in restraint of trade," 15 U.S.C. § 1 (emphasis added), the Supreme Court has long held that "Congress intended to outlaw only *unreasonable* restraints." *State Oil*, 522 U.S. at 10 (emphasis added).  A restraint is unreasonable if it has anticompetitive effects and lacks pro-competitive redeeming value.  *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 5 (1958).  Courts evaluate whether a restraint of trade is unreasonable by applying the "rule of reason," which "take[s] into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect."  *State Oil*, 522 U.S. at 10.  Here, the Superseding Indictment fails to allege any anti-competitive effects attributable to the purported price-fixing agreement described in Count One.  Indeed, it fails to allege *any* facts relevant to a rule of reason analysis.  The Superseding

---

[6] The Superseding Indictment alleges that various suppliers all offered QSR-2 a discount of two-cents per pound in 2015. *Id.* ¶¶ 117–23.  But the Superseding Indictment makes clear that the *customer* requested this discount.  *Id.* ¶¶ 121, 122(b).

Indictment thus does not sufficiently allege the essential element that the supposed agreement was an unreasonable restraint of trade.

The Superseding Indictment instead attempts to rely on the "per se" rule, Superseding Ind. ¶ 1, which is an evidentiary presumption that particular "types of restraints . . . have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful *per se*." *State Oil*, 522 U.S. at 10. The per se rule may be applied in the civil context. *See Arizona v. Maricopa County Med. Soc.*, 457 U.S. 332, 343–44 (1982) (describing the per se rule as a conclusive presumption). But its extension to the *criminal* context to satisfy an essential element of an offense improperly removes the factual question of reasonability from the jury, thus violating the Due Process Clause of the Fifth Amendment and the jury trial guarantee of the Sixth Amendment.[7] *See Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) ("Taken together, [the Fifth and Sixth Amendments] indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of *every element of the crime* with which he is charged, beyond a reasonable doubt.'") (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)) (emphasis added); *Francis v. Franklin*, 471 U.S. 307, 317 (1985) ("An irrebuttable or conclusive presumption relieves the States of its burden of persuasion by removing the presumed element from the case entirely if the State proves the predicate facts."). Accordingly, a criminal

---

[7] The Tenth Circuit has not squarely addressed the constitutionality of the per se rule in the criminal antitrust context. *But see United States v. Kemp & Assoc's, Inc.*, 907 F.3d 1264, 1277 (10th Cir. 2018) (dismissing a relevant question for lack of jurisdiction). Several courts of appeals have denied constitutional challenges in this regard. *See, e.g.*, *United States v. Giordano*, 261 F.3d 1134, 1143–44 (11th Cir. 2001); *United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1195–96 (3d Cir. 1984). While the Supreme Court historically has applied the per se rule in criminal cases, *see United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218–22 (1940); *United States v. Trenton Potteries Co.*, 273 U.S. 392, 395–401 (1927), the Court has not squarely considered the issue in light of *Apprendi*.

indictment may not rely on the per se rule and must instead allege anticompetitive effects. Count One does not do so and should therefore be dismissed.

### III.     The Indictment Fails To Allege that Either Mr. McGuire or Mr. Stiller Knowingly Joined Any Agreement.

Count One is additionally insufficient for the independent reason that it fails to allege that Messrs. McGuire and Stiller acted with the requisite *mens rea*. To state an offense, the Superseding Indictment must allege that Messrs. McGuire and Stiller *knowingly* joined a price-fixing conspiracy and that they acted with the *intent* to unreasonably restrain competition. *See Gypsum*, 438 U.S. at 443 n.20 ("In a conspiracy, two types of intent are generally required—the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy.").

The Superseding Indictment fails to allege facts that would establish this *mens rea* element. Nowhere does the Superseding Indictment allege that defendants ever spoke to a competitor about pricing, or that they directed anyone else to speak to a competitor, for the purpose of reaching an agreement. The Superseding Indictment alleges, for example, that in connection with one negotiation that occurred in 2014, Mr. McGuire received general information from a Pilgrim's colleague about "the *range* of the total increases (margin and costs) [PPC's competitors] are going in with," which Mr. McGuire forwarded to his boss. Superseding Ind. ¶ 93 (emphasis added). As to Mr. Stiller, the Superseding Indictment alleges that he received competitor information from his colleagues at Pilgrim's, and used that information to *formulate* Pilgrim's bids. *See id.* ¶¶ 111, 112, 113, 122(b), 133. In connection with one bid in 2017, Mr. Stiller allegedly texted a Pilgrim's colleague, "Need you [to] tell industry we are going to hold," *id.* ¶ 133, but the Superseding Indictment does not describe how such a communication

11

was part of an *agreement* between Pilgrim's and its competitors, rather than an independent decision by Pilgrim's about how to price its bid and what to communicate to others. All of this alleges only legal information sharing among Pilgrim's and its competitors, and thus does not allege that Messrs. McGuire or Stiller knowingly joined a price-fixing conspiracy or acted with the intent to unreasonably restrain trade.

## IV. The Superseding Indictment Improperly Alleges Multiple Conspiracies in the Same Count.

An indictment must allege each offense in a separate count. *See* Fed. R. Crim. P. 8(a). Alleging multiple offenses in the same count—duplicity—offends the Sixth Amendment's unanimity requirement by presenting "a danger that the jury may convict a defendant [despite] not reaching a unanimous agreement on precisely which charge is the basis for the conviction." *United States v. Ibarra-Diaz*, 805 F.3d 908, 930 (10th Cir. 2015). Federal courts have dismissed single conspiracy counts where, as here, the count encompasses multiple alleged conspiracies. *United States v. Bowline*, 593 F.2d 944, 946–47 (10th Cir. 1979) (affirming, after a mistrial, the dismissal of a single conspiracy count on the ground that the allegations in the indictment could only be read to allege at least three separate conspiracies); *see also United States v. Gordon*, 844 F.2d 1397, 1401 (9th Cir. 1988) (vacating convictions on a conspiracy count that "charged two conspiracies"); *United States v. Munoz-Franco*, 986 F. Supp. 70, 72 (D.P.R. 1997) (dismissing conspiracy count where "[a] simple reading of the allegations of the indictment shows that these were two separate conspiracies which did not merge").

Defendants incorporate by reference the arguments set forth in Jason McGuire's Motion to Dismiss the Indictment on Statute of Limitations Grounds, ECF No. 79 (Feb. 7, 2022) at 12–16, as to why the only permissible reading of Count One is that each of the fourteen alleged

"episodes" of price-fixing is a separate alleged conspiracy. The Court should dismiss Count One on this independent ground.

## V.  The Sherman Act Is Void for Vagueness.

Finally, the Court should dismiss Count One because the Sherman Act is void for vagueness as applied to the criminal context. "[A] vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). The Sherman Act is the picture of an unconstitutionally vague criminal statute. Its text is inscrutable to law-abiding citizens, speaking in sweeping terms of "every contract, combination . . . or conspiracy, in restraint of trade." 15 U.S.C. § 1. As noted, courts have attempted to clarify the statute by cabining its application to "unreasonable" restraints, *State Oil*, 522 U.S. at 10, but the definition of "unreasonable" has changed so many times as to render the term meaningless. Indeed, a dispute about the scope of the 1890 statute's prohibitions reached the Supreme Court as recently as 2021. *See National Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141 (2021) (considering whether the NCAA's rules against student-athlete compensation violate the Sherman Act). Although the Court rejected a void-for-vagueness challenge to a Sherman Act indictment over a century ago, *Nash v. United States*, 229 U.S. 373 (1913), it did so at a time when the offense was a misdemeanor, rather than (as now) a serious felony. The Act is thus unconstitutionally vague in the criminal context, and Count One should be dismissed.

## CONCLUSION

For the foregoing reasons, Messrs. McGuire and Stiller respectfully request that the Court dismiss Count One.

RESPECTFULLY SUBMITTED,

*/s/ D. Jarrett Arp*
D. Jarrett Arp
Paul J. Nathanson
Uzo Asonye

Davis Polk & Wardwell LLP
901 15th Street NW
Washington, DC 20005
(202) 962-7150
jarrett.arp@davispolk.com

Tatiana R. Martins
Greg D. Andres
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4085
tatiana.martins@davispolk.com

*Attorneys for Mr. McGuire*

*/s/ Kristen M. Frost*
Kristen M. Frost
Patrick Ridley

Ridley McGreevy & Winocur PC-
Denver 303 16th Street, Suite 200
Denver, CO 80202
(303) 629-9700
frost@ridleylaw.com

*Attorneys for Mr. Stiller*

14

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) for Criminal Cases.

By: */s/ D. Jarrett Arp*
D. Jarrett Arp

**CERTIFICATE OF SERVICE**

I hereby certify that, on this twenty-sixth day of September, 2022, I caused the foregoing document to be electronically filed with the Clerk of Court for the United States District Court for the District of Colorado by using the CM/ECF system, which will serve electronic notifications of this filing on all counsel of record.

Respectfully submitted,

*/s/ D. Jarrett Arp*
D. Jarrett Arp
Davis Polk & Wardwell LLP
901 15th St NW
Washington, DC 20005
(202) 962-7150
jarrett.arp@davispolk.com

*Attorney for Mr. McGuire*