**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Judge Daniel D. Domenico

Criminal Case No. 21-cr-246-DDD

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

1. **JASON MCGUIRE; and**
2. **TIMOTHY STILLER,**

        Defendants.

**UNITED STATES' MOTION PURSUANT TO RULE 17(c) FOR COURT ORDER
AUTHORIZING SUBPOENA DUCES TECUM TO PRODUCE
DOCUMENTARY EVIDENCE IN ADVANCE OF TRIAL**

The United States respectfully moves pursuant to 20 U.S.C. § 1232g(b) and Rule 17(c) of the Federal Rules of Criminal Procedure for the issuance of an Order authorizing the Government to serve a subpoena *duces tecum* upon the Colorado State University (CSU) System for the production of specific records and materials relating to former CSU student Defendant Timothy Stiller. The United States has already procured, and produced through discovery, materials voluntarily provided by CSU. However, due to the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g (1994), the United States requires a subpoena to procure the rest of the relevant materials because that statute requires a Court order and notice to former students in order for a University to produce any materials that include a former student's personally identifying information. *See* 20 U.S.C. § 1232g; 34 CFR § 99.31(a)(9) (permitting Universities to disclose personally identifying information related to a student in order to comply

with a subpoena or court order provided the student is given notice or a nondisclosure order is issued). As FERPA requires that a former student (Defendant Stiller) be notified of the subpoena, the United States submits that this notice is satisfied through this motion and Defendant Stiller's opportunity to respond to the same. *Id.*

The proposed narrowly tailored subpoena complies with the requirements the Supreme Court set forth in *United States v. Nixon*, 418 U.S. 683, 699–700 (1974) and specially seeks: (1) all written assignments and papers submitted by Timothy Stiller during the Business 660 Class; (2) all class notes, statements, or discussions uploaded by Tim Stiller to the digital work space in the Business 660 Class; and (3) all records of Defendant Stiller's class attendance in the Business 660 class, including any confirmation demonstrating that Defendant Stiller viewed assigned class lecture videos. This narrowly tailored request will not result in a significant volume of materials in response, for example, the Business 660 Course Syllabus contemplates a total of two case analysis papers and one term paper. Exh. A at 2–3. Any materials the United States receives will be promptly provided to Defendants.

## BACKGROUND

During the course of its investigation, the United States learned that Defendant Stiller obtained his MBA in 2018 through CSU College of Business online with colleagues at Pilgrim's Pride. Defendant Stiller's schooling was funded by Pilgrim's Pride and its parent company. One colleague and potential witness who graduated with Defendant Stiller, Mr. Clay Matthews, provided the government with materials pertaining to a specific course in Spring of 2018, Business 660: Ethical, Legal, and Regulatory Issues. This upper-level course covers "business ethics, business law and the social, legal and regulatory environment in which all modern businesses must

operate." Exh. A at 1. The materials provided to the government by Mr. Matthews and CSU for this course included presentation slides, paper prompts, a lecture video for the course module on antitrust law, and a draft term paper where Defendant Stiller wrote down his views about the Sherman Antitrust Act and obstruction of justice.[1] The information sought will provide further evidence that Defendant Stiller knew that : (1) price fixing was a federal crime; (2) the Department of Justice investigates federal antitrust crimes; and (3) that he wanted to keep evidence of his involvement in a conspiracy to rig bids and fix prices from getting into the hands of investigators. The United States is seeking a narrow set of materials from CSU that is highly relevant and necessary evidence for trial.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 17(c)(1) enables a party to criminal litigation to obtain "books, papers, documents, data, or other objects" for admission at trial. *See* Fed. R. Crim. P. 17(c)(1). The rule "is 'not intended to provide an additional means of discovery,' but 'to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials.'" *United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)).

---

[1] While CSU has not yet been able to provide certain specific information related to Defendant Stiller without a subpoena due to FERPA, Mr. Matthews was able to provide the government with some materials specific to Defendant Stiller, including a draft term paper that Defendant Stiller sent to Mr. Matthews. Some of these materials are attached to this motion as Exhibits. Exh. B (Mar. 2018 Business 660 Slides "Antitrust, Mergers and Acquisitions"); Exh. C (Business 660 Term Paper Instructions); Exh. D (Mar. 4, 2018 Tim Stiller E-mail to Clay Matthews "BUS660-2018-Term Paper-Stiller.Tim"); Exh. E (Tim Stiller Business 660 Draft Term Paper). Each of these has been produced in discovery and was listed on the exhibit list the government disclosed to defense pursuant to this Court's order.

For that reason, to gauge whether a requested Rule 17 subpoena should be permitted, the Supreme Court has set forth a test:

> in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699–700.  To successfully pass the *Nixon* test, the movant "'must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity.'"  *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (quoting *Nixon*, 418 U.S. at 700).

Because the records sought are education records, production of them must be made in accordance with FERPA, 20 U.S.C. § 1232g (1994).  Section 1232g (b)(2)(B) of Title 20 carves out an exception to the prohibition of the disclosure of such records absent the consent of the student for those situations where "the information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that . . . the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency."  20 U.S.C. § 1232g (b)(2)(B).  Information otherwise protected from disclosure may be released pursuant to a Court Order.  General statutory bans on publication do not bar limited disclosure in judicial proceedings, so long as the party seeking discovery makes the requisite showing of relevance to the litigation.  *See generally, Warner Bros. Records Inc. v. Does 1-6*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007).  Under 20 U.S.C. § 1232g, the government must satisfy the Rule 17(c) requirements.  The United States asserts that this request meets each of those requirements. Because FERPA requires that Defendant Stiller be notified, the United States' attached proposed

order includes specific language from the Court stating that Defendant Stiller has received notice and has had an opportunity to contest the subpoena.  See 20 U.S.C. § 1232g(b)(2)(B); 34 C.F.R. §§ 99.31(a)(9), 99.35.

**ARGUMENT**

The documents and materials sought through this motion are both relevant and material to the prosecution, and these records are likely to contain admissible evidence relating Defendant Stiller's understanding of and disregard for the Sherman Antitrust Act and his state of mind and intent to commit witness tampering and obstruction of justice.

**I.     The Documents Sought are Evidentiary and Relevant.**

The specific records sought by the United States satisfy the *Nixon* requirement of being evidentiary and relevant.  418 U.S. at 699–700.  During its investigation, the United States reviewed documents received from Defendants and potential witnesses (all of which have been produced to Defendants) relating to Defendant Stiller's enrollment in an MBA program at CSU. In order to demonstrate the highly relevant nature of the narrow set of materials sought, it is worth summarizing some of the related evidence the United States has already obtained and will present at trial.  In Spring 2018, Defendant Stiller and Mr. Matthews were both enrolled in a course named "Ethical, Legal, and Regulatory Issues."  Exh. A at 1.  One course module, which included a class lecture as well as assigned readings and a paper, specifically covered the topic of "Antitrust, Mergers and Acquisitions."  Exh. B at 2.  This class was taught in March 2018.  *Id.*  Defendant Stiller was taught that per se violations of the Sherman Act included civil and criminal liability, and that price fixing was a per se violation.  *Id.* at 4–7.  Defendant Stiller was required to read materials related to this topic (Exh. A at 5), and was required to submit a paper on March 4, 2018.

5

(Exh. C at 1). The paper was an issue-spotter assignment, and required students to read fact patterns and respond to them by spotting legal and ethical issues and then analyzing those issues. *Id.* One such prompt in this paper, prompt 2.b., is included below:

> With regard to drafting the agreement with DOA, Betty at first did a draft of the agreement and sent it to Nouv's contact there. In the draft Betty only indicated the agreed number of lenses DOA was going to buy from QPI. After sending the draft, she read an article on insider trading and decided to delete the draft agreement since it might implicate her in an investigation. Betty felt good that she had deleted any evidence that she might have been involved if an investigation was done later.

*Id.* at 4.

On March 4, 2018, before the paper was due, Defendant Stiller e-mailed Mr. Matthews a draft of this paper. Exh. D. Defendant Stiller used his Pilgrim's Pride e-mail address, Tim.Stiller███████, to e-mail Mr. Matthews on Mr. Matthews's personal e-mail address. *Id.* The e-mail subject line makes plain what the e-mail was about: "BUS660-2018-Term Paper-Stiller.Tim". *Id.* The draft term paper that Defendant Stiller sent to Mr. Matthews included the below statements by Defendant Stiller, analyzing prompt 2.b.

> Does Betty commit obstruction of justice by purposefully deleting emails that would implicate her in collusion with another company?
> Sending the email would be the evidence that the collusion took place between QPI and DOA and while she believes she deleted it, nothing is really deleted in today's world. This would be violation of Sherman Antitrust Act.

Exh. E. at 1. At trial, Mr. Matthews will be able to authenticate these exhibits, and authenticate these statements as Defendant Stiller's. While Defendant Stiller's draft paper incorrectly asserted that the Sherman Act can support an obstruction of justice charge, his analysis was correct in terms of the criminality of a person "purposefully deleting e-mails that would implicate" them in an investigation, provided the other elements of obstruction of justice under a different statute were met. *See United States v. Sterling*, 860 F.3d 233, (4th Cir. 2017) (describing what the government

needs to prove to secure a conviction under 18 U.S.C.A. § 1512(c)(1)); Seventh Circuit Pattern Criminal Jury Instructions (2020 ed.), Instruction titled "18 U.S.C. § 1512(c)(1) DESTROY, ALTER OR CONCEAL DOCUMENT OR OBJECT— ELEMENTS" at 624. More importantly, Defendant Stiller's own statements show that he was aware that purposefully deleting potential evidence could be a federal crime and that the Sherman Act could lead to criminal charges. These statements are direct evidence of Defendant Stiller's state of mind, and thus his intent to obstruct justice and tamper with a witness. *See United States v. Phillips*, 583 F.3d 1261, 1263–64 (10th Cir. 2009) (discussing obstructive intent required for 18 U.S.C. §1503 and § 1512(c)(2)).

The very day after Defendant Stiller sent this e-mail and draft paper to Mr. Matthews, on March 5, 2018, a prosecutor and a Special Agent with the Department of Commerce visited Defendant Stiller's home in an attempt to interview him. Exh. F, Report Detailing Attempted Interview of Defendant Stiller on Mar. 5, 2018. Soon thereafter, per Verizon phone records produced in discovery, Defendant Stiller placed three calls to Mr. Matthews, at 6:13 pm, 6:21 pm, and 6:27 pm. The first two calls only show a duration of 1 minute on the Verizon records, suggesting that these calls were not completed. The third call, at 6:27 pm, shows a 2 minute duration.

Immediately after Mr. Matthews did not pick up Mr. Stiller's first call at 6:13pm, Defendant Stiller texted Mr. Matthews "You need to call me" at 6:15 pm. Exh. G at 1.[2] After the

---

[2] The text message records produced by Pilgrim's Pride in discovery list time stamps in Coordinated Universal Time (UTC). Accordingly, the first text message is listed as being sent at 1:15 am on March 6, when in fact, it was sent seven hours earlier, at 6:15 pm Mountain Time. The remaining text messages in the thread were similarly sent seven hours earlier than displayed. This timeline is corroborated by the Verizon phone records, as well as testimony Mr. Matthews may offer at trial.

pair eventually connected on the phone at 6:27 pm, they exchanged additional text messages beginning with Defendant Stiller messaging Mr. Matthews at 6:48 pm and sending the business card of a Special Agent with the Department of Commerce. *Id.* at 3. Defendant Stiller's wife told the Special Agent and prosecutor that Defendant Stiller was ill. *See* Exh. F.at 1.

The very narrow set of materials sought by the United States from CSU relate to this set of facts; bear on Defendant Stiller's state of mind; show Defendant Stiller's motive; demonstrate his intent to commit obstructive acts; and show his consciousness of wrongdoing. The Superseding Indictment in this case charges Defendants Stiller and McGuire with violating the Sherman Act through a conspiracy that included concealment to prevent discovery as a manner and means of the conspiracy. ECF. 102 at 10. Defendant Stiller is further charged with (a) witness tampering in or around January 2018 in violation of 18 U.S.C. § 1512(b)(2)(A); (b) obstructing an official proceeding between approximately June 2018 and February 2019 in violation of 18 U.S.C. § 1512(c)(1); and (c) witness tampering in or around April 2021 in violation of 18 U.S.C. § 1512(b)(2)(A). ECF No. 102 at 37–39. Accordingly, each of the obstructive acts for which Defendant Stiller is charged occurred *after* he took a class teaching him about the Sherman Act and obstruction of justice, *after* he declined to be interviewed by federal investigators; and *after* his own statements demonstrate that he knew of the consequences he could face by violating the Sherman Act.

The foremost fundamental principle regarding subpoenaed discovery is that a subpoena *duces tecum* to obtain materials in advance of trial should be issued when the party seeking the materials can show that the materials are evidentiary and relevant. *Price v. Cochran*, 66 Fed. Appx. 781, 786, 2003 WL 21054706, at *4 (10th Cir. 2003). Here the narrowly tailored categories

of information sought will provide admissible evidence relevant to Defendant Stiller's knowledge of the wrongness of his actions, motive to commit obstruction of justice and witness tampering, and intent to obstruct official proceedings through his acts. *See United States v. Carleo*, 576 F.2d 846 (10th Cir. 1978). *First*, Defendant Stiller's final, submitted term paper will provide admissible, opposing party statements, that go to these very issues that are so central to trial. *See* Fed. R. Evid. 801(d)(2); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 665–67 (10th Cir. 2006). The nature of this evidence is shown by the draft paper that Defendant Stiller sent to Defendant Matthews. Exh. F. As discussed above, Defendant Stiller's draft paper analyzed the very types of crimes for which he has been charged, and was written the day before he declined an interview with federal investigators and before he committed the obstructive acts for which he is facing trial. The final paper, which CSU is likely to possess, will complete this story and provide the missing statements and final words Defendant Stiller used to describe his own state of mind concerning the legality of his own actions, and therefore, his motive to obstruct justice.

*Second* and similarly, the Business 660 course had a significant component devoted to discussion of these topics. *See* Exh. A at 3–4 (explaining that class participation and debate assignments constitute 40% of a student's grade). Therefore, any statements that Defendant Stiller made in the class's virtual space may well contain admissible, highly probative evidence, in the form of his own statements, just like his term paper.

*Third*, while the evidence of the course slides and video lecture that the United States has already obtained is relevant and admissible regardless of whether additional evidence is obtained, evidence of records demonstrating that Defendant Stiller viewed the course lecture on Antitrust law will further demonstrate his knowledge of the criminality of price fixing, and therefore, his

knowledge of his own wrongdoing, motive to prevent evidence from being found, and intent to obstruct an official proceeding.

Each of these categories of materials bears on Defendant Stiller's participation in the Sherman Act conspiracy, as well as his obstructive crimes—because the manner and means of the conspiracy includes attempts to conceal evidence. ECF. 102 at 10. Put simply, this narrowly tailored subpoena is likely to produce evidence that is relevant to demonstrate that Defendant Stiller knew what he was doing—and what he attempted to conceal—was illegal.

Additionally, evidence of Defendant Stiller's actions and education can be used to establish his knowledge "in the context of a conspiracy prosecution." *United States v. Anaya*, 727 F.3d 1043, 1051 (10th Cir. 2013) (quoting *United States v. Wacker*, 72 F.3d 1453, 1469 (10th Cir. 1995)). And, "the trier of fact may properly consider the general educational background and expertise of the defendant as bearing on the defendant's ability to form the requisite willful intent." *United States v. Fletcher*, 928 F.2d 495, 501–02 (2d Cir. 1991) (citations omitted), *cert. denied*, 502 U.S. 815 (1991). A jury may infer knowledge of the law from a defendant's education and expertise. *United States v. MacKenzie*, 777 F.2d 811, 818 (2d Cir. 1985) ("Defendants' backgrounds (each had a college degree, [one defendant] in economics and [another defendant] in business) also demonstrate the likelihood they knew what the law required."), *cert. denied*, 476 U.S. 1169 (1986).

In order to convict under the statutes relating to obstruction of justice and obstruction of a criminal investigation, proof of intent to obstruct justice is required. *See Carleo*, 576 F.2d at 849–50 (discussing intent required for violations of 18 U.S.C. §§ 1503, 1510), *cert. denied*, 439 U.S. 850 (1978). Because context and state of mind are relevant to the charged offenses, the United

10

States should be able to introduce evidence relating to Defendant Stiller's education on the Sherman Antitrust Act and obstruction of justice. *See generally United States v. Dillard*, 184 F. Supp. 3d 999, 1003–04 (D. Kan. 2016).

## II.     The Materials from CSU are Not Otherwise Procurable.

The specific records sought by the United States satisfy *Nixon* because they are not otherwise procurable due to FERPA. 418 U.S. at 699–700; 20 U.S.C. §1232g(b). Title 20 of the United States Code provides statutory privacy protection for academic records. Because Colorado State School of Business is bound by FERPA, absent the consent of the Defendant, a subpoena or other court order is the only lawful means of securing these relevant records.

It is well-established that compliance with FERPA is mandatory for any federally-funded educational institution. *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1179 (D. Kan. 2018) (citing *Interscope Records v. Does 1–14*, 558 F.Supp.2d 1176, 1180–81 (D. Kan. 2008) and 20 U.S.C. § 1232g. Absent a court order or consent, FERPA generally prohibits disclosure of certain student records, providing that:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information...) of students without the written consent of the parents to any individual, agency, or organization...

*Id*. (citing 20 U.S.C. §§ 1232g(a) and (b)(1)).

Relative to this case, there are two methods by which some, or all, of any FERPA-governed information could be released pursuant to a court order. FERPA defines "educational records," which may not be released, as "those records, files, documents, or other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or

institution." *Id*. (citing 20 U.S.C. § 1232g(a)(4)(A); *United States v. Miami University*, 294 F.3d 797, 812 (6th Cir. 2002)).

### III. The Government Cannot Properly Prepare for Trial Without Such Production.

It is incumbent upon the United States to be prepared for every foreseeable issue that can arise during trial. Prior preparation will allow the United States the opportunity to present to the jury all relevant evidence bearing upon Defendant Stiller's personal background, education, and knowledge of both the Sherman Antitrust Act and obstruction of justice. It is essential that the United States have the opportunity to review Defendant Stiller's CSU records from the Spring 2018 Business 660 course, identify information bearing upon the charged offenses, and prepare a cogent presentation of the information for the jury.

Moreover, the prosecution is generally entitled to prove its allegations by evidence of its own choice. *See Old Chief v. United States*, 519 U.S. 172 (1997); *United States v. Wacker*, 72 F.3d 1453, 1473 (10th Cir. 1995), modified (Mar. 11, 1996). As the Supreme Court recognized in *Old Chief*, the government must be given an opportunity "to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight." *Id*., 519 U.S. at 187 (citation and quotation marks omitted).

### IV. The Application is Made in Good Faith and is Not a Fishing Expedition.

Finally, the United States' application is made in good faith and is not a "fishing expedition." *Nixon*, 418 U.S. at 699–700. The United States seeks the particularized records from CSU as a result of the government's knowledge that Defendant Stiller attended CSU Business

School. There is substantial evidence to indicate both that Defendant Stiller took Business 660, submitted a term paper specifically addressing prompts discussing the Sherman Antitrust Act and obstruction, and that the focus of the course was to educate business students about legal and ethical issues encountered by business professionals as well as the analytical skills for making judgments. As noted above, such records are likely to provide both relevant and material evidence relative to the charged offenses. *Nixon*, 418 U.S. at 700; *United States v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981).

## CONCLUSION

For all of the above reasons the government requests the Court issue an Order authorizing the issuance of a subpoena *duces tecum* directed to the Colorado State University System for the production of certain records and materials relating to former student Defendant Timothy Stiller. The United States has constructed the requests narrowly to target documents and materials solely in the possession of Colorado State University in the good-faith belief that these documents and materials cannot otherwise be obtained by them under 20 U.S.C. §1232g(b). Issuance of these subpoenas prior to trial is essential to ensure trial can proceed without delay once it begins. Any materials the United States receives will be promptly provided to Defendants.

Respectfully submitted this 11th day of October, 2022.

By:   */s/ Kaitlyn E. Barry*
Kaitlyn E. Barry
Laura Jing Butte
Yixi (Cecilia) Cheng
Sara M. Clingan
Daniel A. Loveland, Jr.
Trial Attorneys
U.S. Department of Justice
Antitrust Division
Washington, D.C. 20530
202-476-0453
kaitlyn.barry@usdoj.gov
*Attorneys for the United States*

**CERTIFICATE OF CONFERENCE**

In compliance with Local Rule 7.1(a), the United States conferred with counsel for Defendants. On October 5 and 6, 2022, the United States conferred with Counsel for Defendants via email. On October 6, the United States additionally conferred with Counsel for McGuire via telephone. Counsel for Defendant McGuire stated their position as deferring to counsel for Defendant Stiller concerning their position on this motion. Via email on October 6, Counsel for Defendant Stiller expressed that they oppose the motion.

14

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

By: */s/ Kaitlyn E. Barry*
Kaitlyn E. Barry
Laura Jing Butte
Yixi (Cecilia) Cheng
Sara M. Clingan
Daniel A. Loveland, Jr.
Trial Attorneys
U.S. Department of Justice
Antitrust Division
Washington, D.C. 20530
202-476-0453
kaitlyn.barry@usdoj.gov
*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on this October 11th, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

By: */s/ Kaitlyn E. Barry*
Kaitlyn E. Barry
Laura Jing Butte
Yixi (Cecilia) Cheng
Sara M. Clingan
Daniel A. Loveland, Jr.
Trial Attorneys
U.S. Department of Justice
Antitrust Division
Washington, D.C. 20530
202-476-0453
kaitlyn.barry@usdoj.gov
*Attorneys for the United States*