IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Criminal Action No. 1:21-cr-00246-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

(1) JASON McGUIRE; and
(2) TIMOTHY STILLER,

    Defendants.

**ORDER DENYING MOTIONS TO DISMISS**

Defendants Jason McGuire and Timothy Stiller are charged with one count of Price Fixing/Bid Rigging in violation of the Sherman Act, 15 U.S.C. § 1. (Doc. 1; Doc. 102.) Defendant McGuire moves to dismiss the indictments under Federal Rule of Criminal Procedure 12(b)(1) on the ground that the five-year statute of limitations for the alleged crime had elapsed at the time of his indictment. Separately, both defendants move to dismiss the charge on the bases that (1) the indictments fail to allege an antitrust conspiracy, (2) the indictments improperly allege multiple conspiracies in the same indictment, and (3) the underlying statute—the Sherman Antitrust Act—is unconstitutional. Courts owe deference to a grand jury's finding of probable cause that a defendant committed a crime and may only dismiss an indictment under Rule 12(b)(1) if "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969). Since the defenses raised in the motions to dismiss require further factual inquiry, and since the

Sherman Act's constitutionality is undisputed under Tenth Circuit precedent, both motions to dismiss are denied.

The Government's evidence in this case has been far from convincing, as reflected by its failure to secure a conviction in three trials in one related case, its choosing to dismiss the charges against every alleged co-conspirator in this case and another brought in this District except the two defendants remaining in this case, and its failure to show a conspiracy for evidentiary purposes in this case (*see* Doc. 268). Nevertheless, I cannot grant the present motions. The Constitution affords substantial authority to grand juries, and, as explained below, the defendants have not met the high threshold required for dismissal of an indictment.

## BACKGROUND

A grand jury of the District of Colorado indicted Defendants McGuire and Stiller on one count of Price Fixing/Bid Rigging in violation of 15 U.S.C. § 1. (Doc. 1; Doc. 102.) The indictments allege that:

> Beginning at least as early as 2012 and continuing through at least early 2019 . . . JASON MCGUIRE [and] TIMOTHY STILLER . . . entered into and engaged in a continuing combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler-chicken products sold in the United States.

(Doc. 1 at 1; Doc. 102 at 1.)

Defendants McGuire and Stiller are the last two remaining defendants in a far-ranging alleged antitrust conspiracy. The Government charged other members of the same alleged price-fixing and bid-rigging conspiracy in separate cases filed in this District. *See United States v. Penn*, No. 1:20-cr-00152-PAB (D. Colo filed June 2, 2020); *United States*

*v. Pilgrim's Pride Corp.*, No. 1:20-cr-00330-RM (D. Colo. filed Oct. 13, 2020); *United States v. Norman W. Fries, Inc.*, No. 1:21-cr-00168-RM (D. Colo. filed May 19, 2021). *Penn* was tried to a jury three separate times, and after two mistrials, the defendants in that case were ultimately acquitted at the third trial. Pilgrim's Pride Corporation pled guilty in 2021. On the day of the *James* hearing in this case, the Government dismissed all charges against the defendants in *Fries*. In this case, the Government has dismissed charges against Defendants Justin Gay and Wesley Scott Tucker. Only Defendants McGuire and Stiller remain.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) allows parties to "raise by pretrial motion any defense . . . that the court can determine without a trial on the merits." When evaluating a motion to dismiss under Rule 12(b), a court should generally rely on "the allegations made on [the indictment's] face, and such allegations are to be taken as true." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). Although this is the preferred approach, a court may "dismiss charges at the pretrial stage under the limited circumstances where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making a determination." *Id.* at 1088.

## DISCUSSION

### I. Defendant McGuire's statute-of-limitations defense requires further factual inquiry.

The statute of limitations to prosecute a defendant under the Sherman Act is five years. 18 U.S.C. § 3282(a). A Sherman Act conspiracy "remains actionable until its purpose has been achieved or abandoned,

and the statute of limitations does not run so long as the co-conspirators engage in overt acts designed to accomplish its objectives." *United States v. Kemp & Assocs.*, 907 F.3d 1264, 1270 (10th Cir. 2018). A defendant remains a member of a criminal conspiracy "until he does some act to disavow or defeat the purpose." *Hyde v. United States*, 215 U.S. 347, 369 (1912). To prove withdrawal from an antitrust conspiracy, a defendant may show "[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators." *United States v. United States Gypsum Co.*, 438 U.S. 422, 464 (1978).

Defendant McGuire alleges that he withdrew from the alleged conspiracy when he resigned from Pilgrim's Pride on May 12, 2016, over five years before he was first indicted on July 28, 2021. (Doc. 79 at 10.) He argues that since his participation in the conspiracy depended upon his employment, his resignation from Pilgrim's Pride constitutes withdrawal. (*Id.*) As the Government correctly observes in its opposition brief, Defendant McGuire's defense relies on a host of factual questions: (1) whether his role in the conspiracy depended entirely on his status as an industry insider; (2) whether he abandoned any and all means of participating in the conspiracy by resigning from Pilgrim's Pride; (3) whether resigning from Pilgrim's Pride rendered any continuing participation in the conspiracy impossible; (4) whether his resignation provided sufficient notice to his alleged coconspirators to constitute abandonment; and (5) whether his co-conspirators understood his resignation to be a withdrawal from the conspiracy. (Doc. 94 at 5-6.) Since Defendant McGuire cannot prove withdrawal from the alleged conspiracy without further evidence supporting the above determinations, his statute-of-limitations defense cannot be resolved on a motion to dismiss.

Defendant McGuire argues that Tenth Circuit precedent requires treating resignation from an organization as withdrawal where participation in a conspiracy was contingent on employment. (Doc. 79 at 8 (citing *Glazerman v. United States*, 421 F.2d 547, 551-52 (10th Cir. 1970)).) The Tenth Circuit's conclusion in *Glazerman*, however, was derived from its interpretation of a factual record established at trial, rather than a generalized principle that resignation from employment always constitutes withdrawal. 421 F.2d at 551-52. The facts in *Glazerman* showed that employees had abandoned the conspiracy by resigning, but I cannot draw the same conclusion here without further factual determinations. The indictments allege that the defendants engaged in a price-fixing and bid-rigging conspiracy through 2019, well beyond the date of Defendant McGuire's resignation from Pilgrim's, and within the applicable statute of limitations. (Doc. 1 at 1; Doc. 102 at 1.) While Defendant McGuire is right that his resignation is noted on the face of the indictments, the indictments do not equate resignation with withdrawal, nor do they otherwise exclude Defendant McGuire from the later allegations. It cannot be said then that Defendant McGuire's resignation constituted withdrawal as a matter of law, so his motion to dismiss must be denied.

### II. Whether the alleged conspiracy should be divided into fourteen requires further factual inquiry.

Defendants McGuire and Stiller argue that the Government alleges not one, but fourteen separate antitrust conspiracies. (Doc. 79 at 12; Doc. 177 at 12-13.) Defendant McGuire argues that the five-year statute of limitations protects him since the only conspiracy that involved him ended in December 2015. (Doc. 79 at 12.) Both defendants argue that combining multiple conspiracies into a single count violates the Sixth Amendment. (Doc. 177 at 12.)

A single conspiracy exists whenever "a common objective was shared by each participa[nt]." *United States v. Beachner Constr. Co., Inc.*, 729 F.2d 1278, 1283 (10th Cir. 1984). Courts consider "whether the alleged coconspirators' conduct exhibited interdependence" and whether the co-conspirators "intend[ed] to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged." *United States v. Fishman*, 645 F.3d 1175, 1189 (10th Cir. 2011). The indictments allege that Defendants McGuire and Stiller participated in a single overarching conspiracy (Doc. 1 at 1; Doc. 102 at 1), and at the motion-to-dismiss stage, I must take this allegation to be true. *United States v. Sampson*, 371 U.S. 75, 78-79 (1962). The defense that the alleged conspiracy was in fact fourteen separate conspiracies requires further factual determination and is therefore inappropriate for resolution at the pretrial stage.

### III. The indictments sufficiently allege a Sherman Act violation.

Defendants McGuire and Stiller argue that the indictments should be dismissed because (1) they fail to allege an agreement, (2) they fail to allege that the agreement unreasonably restrains trade, and (3) they fail to allege that Defendants McGuire and Stiller joined the agreement knowingly. (Doc. 177.)

Count One of the indictments alleges that the defendants "entered into and engaged in a continuing combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States." (Doc. 1 ¶ 1; Doc. 102 ¶ 1.) The defendants argue that this allegation is "conclusory" and merely "parrot[s] the language of [the] statute." (Doc. 177 at 4.) The defendants' analysis confuses civil and criminal standards for dismissing a case. In a civil case, a party cannot support a complaint through "conclusory" allegations, *Ashcroft v. Iqbal*, 556

- 6 -

U.S. 662, 678 (2009), but no such analog exists for grand-jury indictments in the criminal context. Instead, a court must take all allegations in a criminal indictment—whether non-conclusory or conclusory—to be true. *Hall*, 20 F.3d at 1087. "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Washington*, 653 F.3d 1251, 1259 (10th Cir. 2011). Both the indictment and the superseding indictment provide sufficient detail to satisfy that standard.

### IV. Price fixing and bid rigging are per se violations of the Sherman Act.

The defendants argue that the indictments are insufficient under the Fifth and Sixth Amendments because by relying on the per se illegality of price-fixing, they improperly remove an element of the crime for consideration by the jury. (Doc. 177 at 10.) Courts evaluate antitrust claims according to one of two methods. "[M]ost antitrust claims are analyzed under a 'rule of reason,' according to which the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors." *State Oil v. Khan*, 522 U.S. 3, 10 (1997). Other antitrust claims, including price-fixing, "have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful per se." *Id*.

The defendants' argument turns on whether per se analysis in antitrust law is a substantive rule of law or a rule of evidence. The constitutional rights to due process and trial by jury, taken together, "entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (cleaned up).

The defendants argue that per se analysis is an evidentiary presumption that certain restraints on competition are unreasonable, and that application of this presumption in the criminal context removes the factual question of reasonability from the jury. (Doc. 177 at 10.) The Government argues that the per se rule is a substantive rule of law, rather than an evidentiary presumption, and that its application therefore does not lower the prosecution's burden to prove every element of a crime. (Doc. 205 at 5.) The Supreme Court has applied the per se analysis to criminal cases, but that was before its decision in *Apprendi* and other similar cases. *See, e.g., United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940). The Tenth Circuit has not weighed in on this question, but every circuit that has done so has rejected the defendants' arguments. *See, e.g., United States v. Giordano*, 261 F.3d 1134, 1143-44 (11th Cir. 2001).

The weight of authority is on the Government's side that "'unreasonableness' is an element of the crime only when no per se violation has occurred," and the "per se rule does not establish a presumption" and "is not . . . a rule of evidence." *Id.* at 1144. Instead, "the per se rules define types of restraints that are illegal without further inquiry into the competitive reasonableness, they are substantive rules of law . . . . It is as if the Sherman Act read: 'An agreement among competitors to [fix prices] is illegal.'" *United States v. Brighton Bldg. & Maint. Co.*, 598 F.2d 1101, 1106 (7th Cir. 1979). Although the defendants' argument is analytically plausible, no court of appeals has endorsed it. Under the available authority, the indictments here satisfy the requirement to "set[] forth the elements of the offense charged, put[] the defendant[s] on fair notice of the charges against which [they] must defend, and enable[] the defendant[s] to assert a double jeopardy defense." *Washington*, 653 F.3d at 1259.

The defendants' argument is not without some merit, and it is true that by proceeding under the per se rule, the Government runs the risk that the Tenth Circuit may depart from its sister circuits and overturn any convictions on appeal. But I will not dismiss the indictments on this ground.

## V. The Sherman Act is not void for vagueness.

Defendants allege that the Sherman Act is void for vagueness as applied in the criminal context. (Doc. 177 at 13.) Under the void-for-vagueness doctrine, the Government violates the Fifth Amendment's Due Process Clause "by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 565 (2015). The defendants accurately note that the Sherman Act's "text is inscrutable to law-abiding citizens, speaking in sweeping terms of 'every contract, combination . . . or conspiracy, in restraint of trade.'" (Doc. 177 at 13 (citing 15 U.S.C. § 1).)

They have a point. The Sherman's Act's prohibition of "every contract, combination . . . or conspiracy, in restraint of trade" encapsulates every possible contract. A consumer who orders dinner from Uber Eats restrains trade by preventing the delivery person from selling the meal to someone else along the way. Any subscription contract restrains trade by preventing the seller from switching to a higher-paying buyer. *See Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 189 (2010) ("'[R]ead literally,' § 1 would address 'the entire body of private contract,' [but] that is not what the statute means."). The Sherman Act is "so devoid of content that a court tasked with interpreting it 'would simply be

- 9 -

making up a law—that is, exercising legislative power.'" *Sessions v. Dimaya*, 138 S. Ct. 1204, 1249 (2018) (Thomas, J., dissenting). The range of behavior prohibited by the Sherman Act is so broad that the law only has meaning if courts define the prohibited behaviors. *See id.* (citing a "statute that requires 'goodness and niceness'" as an example of a constitutionally void statute). Criminal behavior in the antitrust context is effectively defined by federal common law, even though the Constitution forbids common-law crimes. *United States v. Hudson*, 11 U.S. 32, 34 (1812) ("The legislative authority of the Union must first make an act a crime, affix a punishment to it, and declare the Court that shall have jurisdiction of the offence.").

Nonetheless, the Supreme Court and the Tenth Circuit have both rejected the argument that the Sherman Act is void for vagueness, and I am bound by that precedent. *See Nash v. United States*, 229 U.S. 373 (1913); *Atlas Building Prod. Co. v. Diamond Block & Gravel Co.*, 269 F.2d 950, 955 (10th Cir. 1959).

## CONCLUSION

It is **ORDERED** that Defendants' Motions to Dismiss (Docs. 79 and 177) are **DENIED**.

DATED: October 14, 2022

BY THE COURT:

Daniel D. Domenico
United States District Judge

- 10 -